UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

DUNIEL PEREZ,

    Plaintiff,

v.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE,

    Defendant.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff, DUNIEL PEREZ, hereby sues the Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE, and files this Complaint and says:

## THE PARTIES AND JURISDICTION

1. This is an action seeking damages in excess of $75,000.00, exclusive of interest, costs, and attorney's fees.

2. **THE PLAINTIFF**. The Plaintiff, DUNIEL PEREZ (hereinafter Perez or the Plaintiff), is a permanent resident and citizen of Tampa, Florida and is *sui juris*.

3. **THE DEFENDANT**. The Defendant, CARNIVAL CORPORATION d/b/a/ CARNIVAL CRUISE LINE (hereinafter referred to as CARNIVAL, Defendant or the cruise line), has its principal place of business in Miami, Florida. CARNIVAL is incorporated outside the state of Florida, but does business in the State of Florida, and at all times material hereto was and is doing

business in Miami-Dade County, Florida.  At all times material hereto, the Defendant owned and/or operated the Carnival *Paradise* cruise ship on which the subject negligence occurred.

4. **FEDERAL SUBJECT MATTER JURISDICTION.** Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state, and arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C.§ 1333, and is being filed in Federal Court as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5. **VENUE AND PERSONAL JURISDICTION**. The Defendant, at all times material hereto, personally or through an agent, in the County and in the District in which this Complaint is filed:

    a. Operated, conducted, engaged in, or carried on a business venture in this state and/or county; and/or

    b. Had an office or agency in this state and/or county; and/or

    c. Engaged in substantial activity within this state; and/or

    d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181, or 48.193.

6. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

7. **DATE OF INCIDENT.** This incident occurred on October 29, 2016, at approximately 2:50 a.m.

8. **LOCATION OF INCIDENT.**  This incident occurred on the vessel Carnival *Paradise,* a ship in navigable water while the Plaintiff was a passenger aboard.  Accordingly, the Plaintiff's claims are governed by general maritime law.  Specifically, this incident occurred in the Lido Restaurant in the vicinity of the buffet and pizza stations and near the entrance of the restaurant and galley (ship's kitchen).

9. **STATUS OF PLAINTIFF AS OF DATE AND TIME OF INCIDENT.**  At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and, accordingly, was an invitee while on the subject cruise ship.

10. **DESCRIPTION OF THE INCIDENT.**  Carnival owns and/or manages more than twenty cruise ships.  The Carnival *Paradise* is a cruise ship which was custom built to the specifications of Carnival and first floated on January 29, 1998.  The *Paradise* has a capacity for 2,052 passengers.  On each and every one of its cruise ships, Carnival provides a Lido Deck which is usually one of the top most decks which has a large open area with pools, Jacuzzis, grills, areas for games, and other areas for passenger recreation.  The passengers from the outside area and swimming pools have direct access to the enclosed areas of the Lido Deck, which includes the Lido Restaurant, a popular eating place with several buffet style lines with different types of food.  The Lido Restaurant is open 24 hours a day for passengers to take food and beverages from various buffet style stations including one that serves pizza.  Because of these features, the Lido Deck is a high-traffic area and an area where crewmembers and passengers are constantly carrying plates filled with food and drinks and spilling and dropping the food and drinks on the floor.  These spills cause the floor of the Lido Restaurant to be wet and greasy and accordingly a slip and fall hazard.  The constant food spilled on the floor leaves a greasy film on the floor even after the spill is wiped up.  This greasy film in turn makes the floor even slipperier when it is wet with mop water or other liquids.  Yet, in front of the

buffet stations Carnival had installed a polished stone or glazed tile surface which is extremely slippery when wet. Other portions of the Lido Restaurant are carpeted.

11. Carnival had notice of these repetitive, ongoing conditions and problems. For this reason, Carnival's duty of due care under the circumstances includes the duty to inspect for these spills, water, and other foreign materials on the floor, to clean and to dry the areas, to warn about the areas with signs and personnel, and to prevent passengers from accessing the areas with spills and other materials on the floor by cordoning or blocking off the areas.

12. On October 29, 2016, Carnival allowed and did not clean or warn about mop water on the greasy floor that was located on the floor at the entrance of the Lido Restaurant, near the galley door and by some of the buffet stations. There is evidence that the water on the floor was mop water and that a Carnival employee had mopped the area. The water in the Lido Restaurant further appeared to be from mopping because, among other things, the water was spread over the floor from near the entrance of the Lido Restaurant to the breakfast buffet station located near the entrance of the Lido Restaurant and the door of the galley; the water was slimy like mop water that had sat on the floor for hours; the cruise line had posted a warning cone in the area (but positioned it in the wrong place); the only buffet station that was open was the pizza station; the pool was closed; and the area was not exposed to rain water. The cruise line allowed the greasy mop water to stay on the floor for an extended period of time and allowed its passengers to walk over the floor. Since Carnival created the condition, the Plaintiff is not required to show that Carnival had notice of the condition.

13. But in the unlikely event that Carnival did not mop the area and left it unattended and wet, Carnival had constructive notice of the wet area by the fact that the water had been there for an

4

extended period of time and by the fact that this is an ongoing, repetitive condition on the Lido Restaurant floor.

14. Moreover, the facts show that Carnival had actual notice of the water on the floor because Carnival posted a warning cone to warn people how slippery the floor was however, the warning cone was in the wrong place and was too far away to put passengers that were just entering the Lido Restaurant on notice that the floor was wet and slippery.  The fact that the cone was there (but in the wrong location) is evidence that Carnival had mopped the area and knew the floor was wet and slippery.  Carnival's employees failed to display a sufficient number of signs, cones, or other warning devices to warn passengers that the deck was slippery when wet and did not place the signs or cones in positions that would sufficiently warn people that the floor was slippery when wet when they walked into the Lido Restaurant.  In addition, Carnival's employees failed to block off the area, put blowers on the floor area, put towels down on the area to dry the floor, guard over the area and use personnel to warn passengers away from the slippery floor.

15. Carnival knows that the Lido Restaurants' floors are extremely slippery when wet because grease builds on these floors.  When this grease is combined with mop water and other contaminants the tile floor that Carnival chose and allowed to be used as flooring materials by Carnival's shipyard creates an unsafe or foreseeably hazardous condition.

16. When the Plaintiff walked a few feet into the Lido Restaurant, the mop water combined with other substances on the floor made the floor of the Lido Restaurant unreasonably slippery and caused the Plaintiff to slip and fall on the floor.  The Plaintiff fell and hit the back of his head, along with his back and ribs on the floor causing serious injuries and impairment.

## COUNT I
## NEGLIGENCE

17. The Plaintiff hereby adopts and realleges each and every allegation in paragraphs 1 through 16, above.

18. **DUTIES OWED BY THE DEFENDANT:** The Defendant owed a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Ltd.*, 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3D03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendant also owed a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1992 AMC 1472, 1991 WL 329584 (S.D. Fla. 1991). The Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to, or may reasonable be expected to visit." *See Carlisle v. Ulysses Line Limited, S.A.*, 475 So.2d 248 (Fla. 3d DCA 1985). Defendant also owed a "duty to exercise reasonable care under the circumstances". See, *Harnesk v. Carnival Cruise Lines, Inc*, 1992 AMC 1472, 1991 WL 329584 (S. D. Fla. 1991). The Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to, or may reasonably be expected to visit." See, *Carlisle v. Ulysses Line Limited*, *S.A.*, 475 So. 2d 248 (Fla. 3d DCA 1985). The Defendant created an unsafe or foreseeably hazardous condition, and thus the Plaintiff need not prove notice to show negligence. *Vielleta v. Carnival Corporation*, 2014 WL 11930610 (S.D. Fla. 2014) (citing *Baker v. Carnival Corp.*, 2006 WL 3519093 (S.D. Fla.2006).

19. Carnival breached its duty because it created a dangerous slippery condition onboard the Carnival *Pride,* near the entrance of the Lido Restaurant in front of the buffet stations and the doorway to the galley, by mopping a slick tile floor and leaving mop water, along with detergent, lotion, oil, grease, and/or other foreign substances on the floor without adequately posting cones,

signs, personnel, or other warnings, without blocking off the area, and without otherwise preventing foot traffic or drying of the floors to ensure they were safe for traffic. Carnival allowed the liquid to accumulate and/or remain present on the floor and allowed this area to become and stay wet and slippery over an extended period of time. Carnival also failed to inspect for and to observe on a reasonably frequent basis water, lotion, oils, grease, and/or other foreign substances from the floor from whatever source. It allowed an ongoing, recurring, continuous and/or repetitive problem to occur or to remain on the premises which would cause accidents or injuries and provided negligent maintenance to the area or to the premises. The cruise line also did not properly maintain, repair, replace and refurbish on a regular basis the flooring material so as to reduce the slipperiness of the floor. Further, Carnival failed to add or change out the floor to add aggregate or other surface additions to make the floor less slippery. Carnival choose a flooring material which was unsuitable and unsafe when it was wet and greasy, knowing that the area would be prone to being wet and greasy since it was the floor of the Lido Restaurant. Carnival failed to provide mats or other floor coverings over the slippery floor for passengers to walk on safely. Additionally, Carnival failed to properly and reasonably monitor and control the activities of people in the area, even though Defendant knows this is an area of high traffic and continuous problem. Also, it failed to implement a method of operation which was reasonable and safe and would prevent dangerous conditions such as the one in this case. The cruise line also failed to otherwise maintain the area and the premises in a safe and reasonable manner. Furthermore, Carnival failed to otherwise provide its passengers with a safe place to walk in the Lido Restaurant.

20. Carnival allowed the water to remain on the floor of the Lido Restaurant for an extended period of time.

21. These breaches of Carnival's duty of care under the circumstances proximately caused this incident and the injuries sustained by the Plaintiff.

22. The Defendant either (a) created the dangerous condition, through its agents or employees; and/or (b) had actual knowledge of the dangerous condition; and/or (c) had constructive knowledge of the dangerous condition.

23. The Defendant had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the size and/or nature of the dangerous condition; and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity. Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant should have known about it.

24. In the alternative, notice to the Defendant is not required because the Defendant (a) created the dangerous condition; and/or (b) engaged in and was guilty of negligent maintenance; and/or (c) engaged in and was guilty of negligent methods of operations.

25. The negligent condition was created by the Defendant; and was known to the Defendant; and had existed for a sufficient length of time so that Defendant should have known of it; and was a continuous or repetitive problem thus giving notice to the Defendant.

26. The negligent condition occurred with sufficient regularity so as to be foreseeable by the Defendant, and should have been foreseeable by the Defendant.

27. The Defendant's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and

compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including bodily injury, pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, household, and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including but not limited to bodily injury, pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

By: __s/ John H. Hickey_____
**John H. Hickey (FBN 305081)**
Hickey@hickeylawfirm.com
**Kathleen Phillips (FBN 168149)**
kphillips@hickeylawfirm.com
**Hickey Law Firm, P.A.**
1401 Brickell Avenue, Ste. 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Attorneys for the Plaintiff*